Susan **KRONSTAIN**, Executrix of the Estate of Bert Dares, Deceased, and Florence Dares, Appellees

v.

Thomas J. **MILLER**, M.D., and Hatboro Medical Associates, Appellant.

Appeal of Hatboro Medical Associates.

Superior Court of Pennsylvania.

Argued March 1, 2011.

Filed April 27, 2011.

Joseph Zack, Berwyn, for appellant.

Robert E. Slota, Jr., Lansdale, for appellees.

BEFORE: GANTMAN, MUNDY, JJ., and McEWEN, P.J.E.

OPINION BY MUNDY, J.:

Appellant, Hatboro Medical Associates (hereinafter Hatboro), appeals from the order entered on December 16, 2009, ordering a new trial as to causation only.[1] The order granted in part the motion for post-trial relief filed by Appellees, Susan Kronstain, the executrix of the estate of Bert Dares, and Florence Dares, the decedent's widow.[2] For reasons set forth herein, we quash this appeal.

Bert Dares, the decedent, suffered a massive stroke on December 31, 2003. N.T., 7/28/09, at 85. The underlying case arises from the action filed by Appellees, alleging that Dare's stroke was caused by the negligent medical care and treatment that he received. The stroke incapacitated Dares for the remainder of his life, until his death on June 11, 2008. Prior to his death, Bert Dares and Florence Dares filed an action against Hatboro and Dr. Thomas Miller. The case proceeded to a jury trial on July 22, 2009. The factual background of this matter was aptly summarized by the trial court in its July 1, 2010 opinion.

Bert Dares, a retired elementary school principal and an avid golfer, suffered a cardiovascular incident and a transitory ischemic attack, but was otherwise in excellent health until October

---

1. Dr. Thomas Miller does not appeal the trial court's order.

2. Appellees' post-trial motion requested that the trial court order a new trial as to both codefendants, Hatboro Medical Associates as well as Dr. Thomas J. Miller. The jury determined that Dr. Miller was not negligent and, thus, the trial court denied Appellees' motion as to Dr. Miller.

2003, when he was 84 years old. He then was diagnosed with atrial fibrillation during a routine examination. This can cause blood not to be completely pushed into the ventricle, allowing it to swirl about, which creates a risk of clots. These can enter the bloodstream, and the first place blood goes from the heart is the brain. One risk is a middle cerebral artery stroke, which Mr. Dares eventually suffered.

In 2003 a recognized preventive [treatment] was Coumadin therapy. The dosage of this blood thinning medication must be monitored and adjusted carefully to avoid increased risk of clotting and strokes on the one hand, and bleeding on the other. Physicians do this with a blood test to monitor INR levels. This is not the level of Coumadin, but shows its effect on the blood. Plaintiffs' expert testified the standard of care is to maintain the INR level between 2.0 and 3.0. Defendants' counsel occasionally got those witnesses to agree that some times and some studies suggest levels as low as 1.6 may be appropriate depending on the age and health conditions of the patient. Despite this, both experts maintained that the Level 1 standard and the one appropriate for Mr. Dares was 2.0 to 3.0. Dr. Miller testified he decided a level below and at the low end of this range was appropriate for Mr. Dares, although that is not documented in his chart. Defendants also offered expert testimony that lower levels were appropriate. By ruling Dr. Miller was not negligent, the jury either accepted the defense position on this issue, or considered plaintiffs' evidence insufficient.

On December 26, [2003,] Mr. Dares went to Hatboro Medical Associates where blood was taken. An INR level of 1.4 was reported back that afternoon. A clerk highlighted that result and put it with other test results to be reviewed by a physician, on the table where these were normally left. Dr. Miller was not on duty that weekend. No physicians reviewed that test result, communicated with Dr. Miller or Mr. Dares, nor did anyone adjust Mr. Dares' Coumadin dose. On December 31, 200[3,] Mr. Dares suffered the massive stroke that incapacitated him for the rest of his life. Mr. Dares was alive when this suit was filed. He died on June 11, 2008.

For purposes of explanation and argument plaintiffs' case was presented in terms of the violation of three "rules." Rule 3 was that INR levels should be maintained between 2.0 and 3.0. Rule 1 was that "A doctor must always read printed results of blood tests that get sent to the office." Rule 2 was that "Results of special blood tests called INR tests must be read by a doctor the same day they are received,: Dr. Miller and defendants' expert, Dara Jamieson, M.D., agree Rules 1 and 2 were the standard of care. (NT 7/28/09, p. 81; NT 7/29/09, p. 3) It was also undisputed that these two rules were not followed when Mr. Dares' INR results were received on December 26, 2003.

Trial Court Opinion, 7/1/10, at 4–5; Certified Record (C.R.) at C.R. at 138.

The trial court employed a verdict sheet with special verdict interrogatories, a series of questions that the jury was directed to answer. On July 30, 2010, in answering the first question posed to it by the special verdict interrogatories, the jury found that Dr. Thomas Miller had not acted negligently in treating Dares. Conversely, the jury found that Dr. Miller's practice group, Hatboro Medical Associates, was negligent in the care that it provided to Dares. The jury, nevertheless, was unable to reach a decision as to whether Hatboro's negligence caused Dares' injury. Consequent-

ly, the trial court declared a mistrial as to the questions of causation and damages, and discharged the jury without a final verdict. N.T., 7/30/09, at 28.

Following the mistrial, Hatboro and Appellees filed motions for post-trial relief. Appellees requested that the trial court not disturb the jury's finding of negligence as to Hatboro and that the jury's finding in favor of Dr. Miller be vacated. Appellees further requested that the new trial, necessitated by the mistrial, be limited to the issues of causation and damages. In contrast, Hatboro requested that the trial court vacate the jury's finding of negligence and, rather, conduct the new trial on all issues *de novo*. By order entered December 16, 2009, the trial court granted Appellees' motion for post-trial relief as to Hatboro, ordering "a new trial on causation only[.]"[3] C.R. at 116. In the same order, the trial court denied Appellees' motion as to Dr. Miller, asserting that "the finding of no negligence as to Dr. Miller stands." *Id.*

Thereafter, in seeking our review of the trial court's decision, Hatboro pursued three separate avenues. First, on January 14, 2010, at docket number 255 EDA 2010, Hatboro filed a timely direct appeal from the trial court's December 16, 2009 order. Second, on March 3, 2010, at docket number 24 EDM 2010, Hatboro filed a petition for allowance of appeal, which this Court denied on April 28, 2010. Last, on March 26, 2010, at docket number 858 EDA 2010, Hatboro filed an additional notice of appeal based upon the trial court's amendment to the December 16, 2009 order, certifying it as a final order pursuant to Pa.R.A.P.

341(c). On December 17, 2010, this Court quashed this second direct appeal.

On March 17, 2010, Appellees filed an application to quash the appeal at docket number 255 EDA 2010 as well, arguing that the December 16, 2009 order is not an appealable order under Pa.R.A.P. 311(a)(6). However, in an order entered on April 28, 2010, we denied the application to quash without prejudice to allow Appellees the opportunity to again raise the issue before a merits panel of this Court.[4]

On April 22, 2010, the trial court ordered Hatboro to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Hatboro complied with the trial court's order, filing its statement on May 10, 2010. Subsequently, the trial court issued an opinion on July 1, 2010 pursuant to Pa.R.A.P. 1925(a).

On appeal, Hatboro raises the following seven issues for our review.

1. Whether the trial court's December 15, 2009 Order is appealable as of right and the appeal is properly before this Honorable Court?

2. Whether the trial court erred in accepting a partial verdict as to the negligence of [Appellant] Hatboro Medical Associates?

3. Whether the trial court erred in ordering a new trial as to [Appellant] Hatboro Medical Associates on causation only?

4. Whether the trial court erred in denying [Appellant] Hatboro Medical Associates' Motion for Nonsuit, where [Appellees] failed to present sufficient and qualified expert testi-

---

3. We can only assume that, pursuant to the order of the trial court, a verdict in favor of Appellees on the issue of "causation" will also require the jury to decide the appropriate measure of damages.

4. At oral argument and in their brief, Appellees renewed their claim that this Court should quash the appeal at 255 EDA 2010.

mony to establish a medical malpractice claim as a matter of law?

5. Whether the trial court erred in admitting the expert testimony of Steven R. Levine, M.D.?

6. Whether the trial court erred in denying [Appellant] Hatboro Medical Associates' Motion for a Mistrial after Plaintiffs' closing remarks improperly raised the missing witness adverse inference?

7. Whether the trial court erred in charging the jury on the duty of a specialist?

Hatboro's Brief at 5.

▮ As a jurisdictional issue, before considering the merits of this appeal, we must first determine whether the December 16, 2009 order is an appealable order under the Pennsylvania Rules of Appellate Procedure. Generally, as an appellate court, we only have jurisdiction to review final orders. *See* Pa.R.A.P. 341 (providing that "an appeal may be taken as of right from any final order"). Nevertheless, in appropriate circumstances, the rules allow an appeal to be taken from an interlocutory order. *See* Pa.R.A.P. 311, 312, 313, 341(c).

Here, recognizing that the trial court's December 16, 2009 order is an interlocutory order, Hatboro argues that this Court has jurisdiction to address the merits of the appeal pursuant to Pa.R.A.P. 311(a)(6). Hatboro's Brief at 20. According to Hatboro, the December 16, 2009 order "award[s] a new trial as to Defendant Hatboro on the issue of causation" and, thus, it "is an interlocutory order appealable as of right." *Id., citing* Pa.R.A.P. 311(a)(6). However, in requesting that this Court quash the instant appeal, Appellees contend that the trial court's order did not award a new trial within the meaning of Pa.R.A.P. 311(a)(6). Appellees' Brief at 10–11; Appellees' Motion to Quash at 5.

Rather, Appellees maintain a mistrial resulted in the instant case because "the jury was deadlocked[,]" and consequently "a retrial follows as of course from a mistrial declared due to a deadlocked jury[.]" *Id.* As such, Appellees aver that "a mistrial as a result of a deadlocked jury is not an appealable interlocutory order under Rule 311(a)(6)." Appellee's Brief at 12. Our jurisdiction, thus, depends upon whether Pa.R.A.P 311(a)(6) provides Hatboro with the right to appeal from the trial court's December 16, 2009 order. Accordingly, we must interpret the scope of Pa.R.A.P. 311(a)(6).

▮ We employ the rules of statutory construction to interpret "[our Rules of Appellate Procedure] and all amendments hereto to the same extent as if these rules were enactments of the General Assembly." Pa.R.A.P. 107; *see also* 1 Pa.C.S.A. §§ 1901–1991. "Statutory interpretation implicates a question of law. Thus, our scope of review is plenary, and our standard of review is *de novo.*" *U.S. Bank. Nat. Ass'n v. Parker,* 962 A.2d 1210, 1212 n. 1 (Pa.Super.2008) (citation omitted). "[T]he intent of our Supreme Court, who promulgates our appellate rules, controls interpretation of the rules." *Vogelsberger v. Magee–Womens Hosp. of UPMC Health System,* 903 A.2d 540, 550–551 (Pa.Super.2006), *appeal denied,* 917 A.ed 315 (Pa. 2007), *citing* 1 Pa.C.S.A. § 1921. "When the words of [a rule of appellate procedure] are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).

Pennsylvania Rule of Appellate Procedure 311, **Interlocutory Appeals as of Right,** provides the following in pertinent part.

(a) **General rule.** An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

. . .

**[5, 6]** (6) *New trials.* **An order in a civil action or proceeding awarding a new trial,** or an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge or where the Commonwealth claims that the lower court committed an error of law.

Pa.R.A.P. 311(a)(6) (emphasis added). By limiting the scope of the rule to those orders **"awarding** a new trial," the plain language draws a distinction between (1) orders that grant a request for a new trial and (2) new trials that follow from the declaration of a mistrial. *Id.* (emphasis added). In *Johnson v. Frazier,* 787 A.2d 433, 435 (Pa.Super.2001), we explained this distinction in greater detail as follows.

> There is a marked difference between a court's granting a motion for a new trial and declaring a mistrial; the former contemplates that a case has been tried, a judgment rendered, and on motion therefor[,] said judgment set aside and a new trial granted, while the latter results where, before a trial is completed and judgment rendered, the trial court concludes that there is some error or irregularity that prevents a proper judgment being rendered in which event a mistrial may be declared.

*Id.* (citation omitted). "[A]fter a mistrial due to a deadlocked jury, [a new trial] follows as of course." *Yon v. Yarus,* 700 A.2d 545, 546 (Pa.Super.1997). Conversely, when a court awards a new trial, that trial occurs only because the court issued an order granting it. *See Johnson, supra* at 434–435. Importantly, "while an award of a new trial is immediately appealable under [Pa.R.A.P. 311(a)(6)], a mistrial [and any new trial arising therefrom] is not." *Yon, supra* at 546.

 In the case *sub judice,* as we noted in the procedural history, the trial court declared a mistrial before issuing the December 16, 2009 order. In attempting to answer the questions presented in the special interrogatories, the jury in this case found that Hatboro was negligent but was unable to reach a decision as to whether Hatboro's negligence caused Dares' injury. N.T., 7/30/09, at 26–28. We note that "[a] mistrial is granted in a case in which the jury is discharged without a verdict[.]" *Johnson, supra* at 434. Here, the trial court dismissed the jury without a final decision as to liability and damages because it had become deadlocked on the issue of causation. N.T., 7/30/09, at 28–29. Our Supreme Court has stated that "when special findings are employed in connection with a general verdict, the jury's decision is the general verdict, not the answers to the individual interrogatories[.]" *Fritz v. Wright,* 589 Pa. 219, 907 A.2d 1083, 1092 (2006). Consequently, although it did render a decision regarding Hatboro's negligence, the jury in this case "[was] discharged without a verdict[.]" *Johnson, supra* at 434. Hence, the trial court issued its December 16, 2009 order granting a new trial **after** it had properly declared a mistrial. Thus, as Appellees argued in their motion to quash, the December 16, 2009 order is not an order awarding a new trial.

Accordingly, because it is not an order awarding a new trial, we conclude that the December 16, 2009 order is outside the scope of Pa.R.A.P. 311(a)(6) and, consequently, is not an appealable order as of right. *See Yon, supra* at 546. Because a mistrial had occurred in this case, a new trial would have followed as a matter of course. *Id.* As such, the litigants were entitled to a new trial regardless of the December 16, 2009 order. Thus, despite its language, the trial court's order could not grant a new trial as it purported to do.

Rather than award a new trial, the court's order simply limited the scope of the retrial to causation and, perhaps, damages.

For all of the foregoing reasons, we quash this appeal.

Appeal quashed. Jurisdiction relinquished.