**[J-87-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 15 WAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered December |
| | : | 12, 2019 at No. 1716 WDA 2018, |
| v. | : | quashing the appeal from Order of |
| | : | the Court of Common Pleas of |
| | : | Allegheny County entered |
| JOSHUA WARDLAW, | : | November 5, 2018 at No. CP-02- |
| | : | CR-0013708-2016. |
| Appellant | : | |
| | : | ARGUED: October 21, 2020 |


**OPINION**


**JUSTICE WECHT**                                  **DECIDED: APRIL 29, 2021**

In this criminal case, jurors could not reach a unanimous verdict on some counts, and the trial court *sua sponte* declared a mistrial. The defendant, Joshua Wardlaw, objected to the mistrial, and sought a judgment of acquittal on the unresolved charges. The trial court denied Wardlaw's motion. Wardlaw filed an interlocutory appeal in the Superior Court, claiming a right to do so pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(6), which permits an appeal from a non-final order "awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge." Pa.R.A.P. 311(a)(6). The Superior Court quashed the appeal, holding that Rule 311(a)(6) did not apply because the trial court's declaration of a mistrial was not an "award" of a new trial. We granted Wardlaw's request for discretionary review to consider whether the Superior Court's interpretation of Rule 311(a)(6) was erroneous.

I.

On August 6, 2016, Jonathan Minnie, Amanda Smith, and Alyssa Madison were shot in the parking lot of a bar in Forward Township, Allegheny County. Minnie died within thirty minutes of the shooting. Smith and Madison survived the shooting and identified Joshua Wardlaw as the assailant. The Commonwealth charged Wardlaw with one count of criminal homicide, and two counts each of attempted homicide, aggravated assault, and recklessly endangering another person. At Wardlaw's preliminary hearing on November 16, 2016, Smith and Madison identified Wardlaw as the shooter.

Beginning on October 23, 2018, Wardlaw was tried before a jury over the course of four days. During the trial, the Commonwealth called Smith and Madison to testify, presumably expecting that they would identify Wardlaw as the shooter, as each had done on at least two prior occasions. However, under direct examination, both Smith and Madison testified that they were uncertain that it was Wardlaw who had shot them. In response to these recantations, the Commonwealth confronted each witness with her testimony from the preliminary hearing, at which each affirmatively had identified Wardlaw as the shooter. Though faced with these prior inconsistent statements, Smith and Madison nonetheless maintained that they could not identify the shooter. After the Commonwealth rested its case, the defense moved for a judgment of acquittal on all counts. The trial court denied the motion.

On October 29, 2018, the trial court instructed the jury, and the jury commenced deliberations. The following day, the jury returned a partial verdict. The jury unanimously found Wardlaw not guilty of the attempted homicide counts but indicated that it was deadlocked with respect to the remaining charges. The trial court gave the jury an *Allen*

charge,[1] directing the jurors to continue deliberating and to attempt to reach a unanimous verdict. Approximately two hours later, the jury returned to the courtroom and announced that it was hopelessly deadlocked on all but the attempted homicide charges.

Without a request from either party, the trial court declared a mistrial on the hung charges. Wardlaw objected, maintaining that the jury did not deliberate long enough and, thus, that no "manifest necessity" warranted a mistrial under the circumstances.[2] Implicitly overruling Wardlaw's objection, the trial court reiterated its declaration of a mistrial. The consequence of the court's *sua sponte* order of mistrial was that Wardlaw was required to face a second trial on the hung charges.

On November 5, 2018, Wardlaw filed a motion for judgment of acquittal,[3] wherein he argued that the evidence was insufficient to prove that he was the shooter, which insufficiency necessitated dismissal of all of the remaining charges.[4] Wardlaw asserted

---

[1] *See Allen v. United States*, 164 U.S. 492, 501-02 (1896) (holding that a trial court may instruct a deadlocked jury to continue the deliberations, with an open mind to reconsideration of the jurors' individual views, but without giving up their firmly held convictions).

[2] *See* Pa.R.Crim.P. 605(b) (providing, in relevant part, that a "trial judge may declare a mistrial only for reasons of manifest necessity").

[3] The parties and the courts below oscillated between characterizing Wardlaw's motion as a motion for a judgment of acquittal and a motion in arrest of judgment. Because Wardlaw challenged the sufficiency of the evidence, in substance, his motion was one for a judgment of acquittal. *See* Pa.R.Crim.P. 606(A)(3). A motion in arrest of judgment can be used to challenge the court's jurisdiction based upon double jeopardy or based upon the statute of limitations. *Id.*, Cmt. Any misnomer on the part of the parties or the courts below has no bearing upon the present matter.

[4] On November 5, 2018, Wardlaw also filed a motion to dismiss the case on double jeopardy grounds, arguing that the trial court's *sua sponte* declaration of a mistrial was not supported by manifest necessity. The trial court denied Wardlaw's double jeopardy motion. Wardlaw timely filed a petition for review, which the Superior Court denied by *per curiam* order. *See Commonwealth v. Wardlaw*, 22 WDM 2019 (Pa. Super. July 12, 2019) (*per curiam*). Wardlaw filed a petition for allowance of appeal, which this Court denied. *See Commonwealth v. Wardlaw*, 224 A.3d 362 (Pa. 2020) (*per curiam*).

that, because the only eyewitnesses to the shooting failed to identify him at trial as the perpetrator, the Commonwealth failed to satisfy its burden of proof. After reviewing the evidence in the light most favorable to the Commonwealth, the trial court denied the motion. Wardlaw filed a notice of appeal, exclusively referencing the order denying his motion for judgment of acquittal as the order being appealed. *See* Notice of Appeal, 12/4/2018.

Given that Wardlaw faced a new trial, the denial order was not a final order, and his appeal to the Superior Court was interlocutory. Before the Superior Court, Wardlaw argued that he had a right to file an interlocutory appeal pursuant to Pa.R.A.P. 311(a)(6), which provides:

(a) **General rule**.—An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

. . .

(6) *New trials*.—An order in a civil action or proceeding awarding a new trial, or *an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge* or where the Commonwealth claims that the trial court committed an error of law.

Pa.R.A.P 311(a)(6) (emphasis added).

The Superior Court disagreed, and quashed Wardlaw's appeal. *Commonwealth v. Wardlaw*, 1716 WDA 2018, 2019 WL 6792750 (Pa. Super. Dec. 12, 2019) (unpublished). The panel held that it lacked jurisdiction over the appeal because Rule 311(a)(6) does not provide for interlocutory appeals as of right where a new trial results from the declaration of a mistrial. *Id.* at *2.

In support of its holding, the intermediate panel relied upon *Kronstain v. Miller*, 19 A.3d 1119 (Pa. Super. 2011). In that case, the Superior Court reasoned that, because the plain language is limited to orders "awarding a new trial," Rule 311(a)(6) distinguishes "between (1) orders that grant a request for a new trial and (2) new trials that follow from

the declaration of a mistrial." *Id.* at 1124. In proffering that distinction, the *Kronstain* Court opined that, when a trial court grants a motion for a new trial—*i.e.*, "awards" a new trial—a judgment already has been rendered but is later set aside; conversely, when the trial court declares a mistrial, an error or irregularity prevents the factfinder from rendering a judgment. *Id.* In other words, the Superior Court determined that the rule hinged upon the entry of a judgment, even though the rule does not expressly so state.

Additionally, the Superior Court analogized the procedural posture of Wardlaw's case to the procedural occurrences in *Commonwealth v. McPherson*, 533 A.2d 1060, 1061-62 (Pa. Super. 1987) (*per curiam*). In *McPherson*, the trial court declared a mistrial following a hung jury, and defendant McPherson filed a motion seeking to preclude a second trial upon speedy trial grounds, which motion the trial court denied. *Id.* at 1061. McPherson appealed the denial of his speedy trial motion, alleging that he had a right to an interlocutory appeal under Pa.R.A.P. 311(a)(5), a predecessor to Rule 311(a)(6). *Id.* The Superior Court quashed the appeal, explaining that, under Rule 311(a)(5), "an interlocutory appeal as of right may be taken where an order awards a new trial and the defendant claims that the proper disposition of the matter would be absolute discharge." *Id.* at 1062. The court reasoned that, because the second trial resulted from a mistrial, a new trial was not "awarded," and the rule thus did not afford McPherson an interlocutory appeal as of right. *Id.*

According to the Superior Court's precedent, a new trial only is "awarded" when the trial court grants a party's *motion* for a new trial. Here, neither party filed a motion requesting that the court order a new trial. Rather, the jury's inability to reach a verdict resulted in a mistrial, and a new trial was the natural and necessary consequence of that failure. The trial court never entered an order "awarding a new trial," which is a

prerequisite to an appeal under Rule 311(a)(6). For these reasons, the intermediate panel quashed Wardlaw's interlocutory appeal.

II.

To resolve Wardlaw's challenge to the Superior Court's disposition, we must decide whether a new trial is "awarded" only when the order directing a new trial resulted from a party's motion for a new trial. Because this appeal calls for an interpretation of Rule 311(a)(6)'s language, it "presents a question of law, [and] our scope of review is plenary and the standard of review is *de novo*." *Commonwealth v. Walker*, 185 A.3d 969, 974 (Pa. 2018). With these standards in mind, we turn to Wardlaw's argument.[5]

Wardlaw maintains that our decisions in *Commonwealth v. Liddick*, 370 A.2d 729 (Pa. 1977), and *Commonwealth v. Chenet*, 373 A.2d 1107 (Pa. 1977), compel the conclusion that he is entitled to an appeal under Rule 311(a)(6). He argues that those precedents indicate that Rule 311(a)(6) aims to prevent the erroneous retrial of a defendant and, further, that subjecting him to a new trial would amount to such an error. In furtherance of that position, Wardlaw reasons that his sufficiency of the evidence claim should have caused the trial court to discharge the matter absolutely because, in his view, double jeopardy categorically precludes retrial of a defendant when the Commonwealth fails to adduce sufficient evidence at the first trial. Wardlaw further posits that, in such circumstances, any distinction between a new trial that results from a motion for a new trial and one that results from a mistrial flagrantly defeats the purpose of Rule 311(a)(6). Instead, he asks us to interpret Rule 311(a)(6) as providing a right to an interlocutory appeal to any defendant who faces a new trial but claims that retrial is barred.

---

[5]     Notably, the Commonwealth also asserts that Wardlaw retained a right to file an interlocutory appeal pursuant to Pa.R.A.P. 311(a)(6). Because the Commonwealth's argument aligns largely with Wardlaw's, it is unnecessary to recount the Commonwealth's position.

When we interpret our Rules of Appellate Procedure, we rely upon the rules of statutory construction "to the same extent as if these rules were enactments of the General Assembly." Pa.R.A.P. 107. Generally, our interpretive task seeks to reveal and effectuate the intent of the drafters. *Commonwealth v. Cooper*, 27 A.3d 994, 1003 (Pa. 2011). To that end, we view the language selected by the drafters as the paramount factor. *Id.* If the language of the provision is unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also Commonwealth v. McClelland*, 233 A.3d 717, 734 (Pa. 2020). Only when the language is ambiguous will we resort to other approaches of discerning the intent of the provision at issue. *See McClelland*, 233 A.3d at 734; *see also Walker*, 185 A.3d at 974.

The relevant portion of Rule 311(a)(6) affords an interlocutory appeal as of right from "an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge." Pa.R.A.P. 311(a)(6). As the rule is triggered only upon an "order awarding a new trial," the question becomes whether the rule applies only to those orders that fulfill a specific request by a party for a new trial or whether a *sua sponte* declaration of a mistrial, where there is no specific request by a party, also constitutes an order "awarding" a new trial. In interpreting this term, we must ascribe to the term "award" its common and everyday meaning. *See* 1 Pa.C.S. § 1903(a). Moreover, we will interpret the term in a manner consistent with any technical, legal meaning that it has. *See Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 313 (Pa. 2018) ("Words that have [] precise and settled meanings in the legal realm must be interpreted consistently therewith.")

Although we are not bound to do so, we may attempt to discern a word's common meaning through "an examination of its dictionary definition." *Chamberlain v. Unempl. Compen. Bd. of Rev.*, 114 A.3d 385, 394 (Pa. 2015). Per Black's Law Dictionary, the

verb[6] "award" means "[t]o grant by formal process or by judicial decree." *Award*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, "award" ordinarily is synonymous with the verb "grant," but only to the extent that these two words logically overlap. "Grant" most often means "[t]o permit or agree to [or] to approve, warrant, or order." *Grant*, BLACK'S LAW DICTIONARY (11th ed. 2019). Typically, "award" is a ditransitive verb; it indicates that the subject acts upon an object and that another object benefits from the action.[7] In Rule 311(a)(6), "an order" is the subject; "a new trial" is the direct object; and a party to the

---

[6] The learned Dissent suggests that "award" reasonably can be viewed as a noun because, in Rule 311(a)(6), "'appeal' is the subject, 'taken' is the verb, and the orders appealed from are the direct objects , i.e., the orders that qualify for an appeal as of right." Dissenting Op. at 3. Respectfully, while creative, this interpretation is strained and incorrect. The Dissent notes that that the noun phrase "an order awarding a new trial" is a direct object under its syntactical arrangement. However, the Dissent's arrangement neither converts the nonfinite verb "awarding" into a noun, nor prevents "an order" from operating as both the subject in the *clause* "an order awarding a new trial" and as the direct object of the *full sentence*. In Rule 311(a)(6), "awarding" is describing the noun "order," making "awarding" an adjective. Therefore, the rule's text plainly uses "awarding" as a present participle, which is the nonfinite form of the verb, not the noun, "award." *See* David Crystal, A DICTIONARY OF LINGUISTICS AND PHONETICS 376 (2008) (explaining that a participle is "a word derived from a verb and used as an adjective"). The subject of the participle—*i.e.*, the doer of the action—is the noun that it modifies, thereby rendering "an order" the subject of the verb "award." Because reasonable interpretations do not include grammatically incorrect interpretations, the Dissent's view of "awarding" in the rule does not render "awarding" reasonably susceptible to more than one interpretation. *See* 1 Pa.C.S. 1903(a) ("Words and phrases shall be construed according to rules of grammar."). The Dissent's linguistic approach as to "awarding" arises from a syntactical error, ultimately leading to the Dissent's offer of an unreasonable interpretation of "awarding." Put simply, the Dissent mistakenly concludes that "awarding" is a noun and that "order" is not the subject engaged in the act of "awarding." Consequently, the remainder of its proffered textual interpretation is linguistically unsound.

[7] *See generally* Joybrato Makherjeem, ENGLISH DITRANSITIVE VERBS: ASPECTS OF THEORY, DESCRIPTION AND A USAGE-BASED MODEL 5 (2005) (explaining that a verb is ditransitive when it necessarily has two objects, even if one of the objects is not explicitly mentioned in the sentence.); *see also* 1 Pa.C.S. § 1923(c) ("Words and phrases which may be necessary to the proper interpretation of a statute and which do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation, may be added in the construction thereof.").

action is the implied indirect object that receives the benefit of the action. Accordingly, only those definitions of "grant" that contemplate such a beneficiary relationship also serve to define "award."

"Warrant" and "order" do not entail a beneficiary to the action and, thus, fail to impart meaning to the term "award." Conversely, "permit," "approve," and "agree" contemplate the fulfillment of a desired result, thereby providing the necessary beneficiary relationship. As such, those words supply meaning in the interpretation of "award." Logically, "grant," "permit," "approve," and "agree" require the fulfillment of a preceding request. Because "award" is reasonably synonymous with "grant," "permit," "approve," and "agree," the word "award" also commonly describes an action that specifically fulfills a preceding request. This common meaning of "award" aligns with its usage in the legal realm.

We may glean the legal meaning of a word from its use in the *corpus juris*. *Commonwealth v. Hicks*, 74 A.2d 178 (Pa. 1950) (*per curiam*). The usage of "award" in other rules of court demonstrates that, in its technical sense, the term expresses an action that fulfills a preceding request. For example, an appellate court "may award as further costs damages as may be just," Pa.R.A.P. 2744, provided that, *inter alia*, the party receiving such damages makes "[a]n application for further costs and damages." *Id.* 2751. Likewise, the rule of civil procedure that requires additional damages for the delayed payment of compensatory damages provides that, "[a]t the request of the plaintiff in a civil action . . . [d]amages for delay shall be awarded." Pa.R.C.P. 238(a)(1)-(2). Similarly, Pennsylvania Orphans' Court Rule 5.3 provides that "[t]he court may, at the request of the surviving spouse, award specific real estate." Pa.O.C.R. 5.3(c). Correspondingly, numerous statutory provisions condition a decision to "award" a particular benefit to a party making a specific request for that benefit. *See, e.g.*, 35 P.S.

§ 4013.6(c) ("any person may request the court to award civil penalties"); 62 Pa.C.S. § 512(a) ("Contracts shall be awarded by competitive sealed bidding."); 64 Pa.C.S. § 1552 ("the department may request that the authority finance the loan . . ., and, if approved, the authority shall award a loan"). These provisions militate in favor of the conclusion that, as a legal term, the verb "award" expresses an action that fulfills a request for a particular benefit. We are obligated to use that meaning in interpreting Rule 311(a)(6). Both the common meaning and the technical usage of "award" require that interpretive approach.[8]

---

[8] The Dissent insists that the "meaning of 'awarding' is not limited to something conferred only upon request." Dissenting Op. at 4. The Dissent premises this conclusion on its comment that "a person can be 'awarded' something they do not want." *Id.* As an example, the Dissent references Jean-Paul Sartre's refusal to accept the Nobel Prize. Outside of the legal realm, one can be "awarded" that which he or she does not request personally. But, in those circumstances, the verb "award" means that an ordinarily desirable thing (*i.e.,* international acclaim along with a large sum of money) was conferred upon an individual (*i.e.,* Sartre) *because that individual engaged in conduct* that deserved or merited that which was conferred (*i.e.,* Sartre's authorship of philosophical works that rejected limitations on free choice and that disavowed institutions that subject persons and ideologies to unequal treatment). *See Award*, MERRIAM-WEBSTER ONLINE DICTIONARY ("to confer or bestow as being deserved or merited or needed").

As such, in its non-legal usage, the conduct of the individual precedes the action of "awarding" something that *typically* would appear desirous to that individual, even if the beneficiary of the action does not desire the benefit in fact. The Dissent overlooks the necessity of an action that precedes the conferral of the benefit and that was performed by the person upon which the benefit was conferred. Here, neither of the parties performed any act that merited a conferral of a benefit upon them. The only conduct a party to litigation can engage in that merits, deserves, or demonstrates a need for the conferral of a new trial is conduct that offers a legally sufficient request for the desired benefit—*i.e.,* a new trial. Obviously, if a party's conduct results in a mistrial, that illegal conduct precludes a construction of a new trial's conferral upon that party "as being deserved, merited, or needed" by that party.

Additionally, taking the Dissent's example seriously, a request does in any event predicate the act of "awarding" the Nobel Prize. Consider, for example, the fact that "[t]he candidates eligible for the Literature Prize are those nominated by qualified persons." *Nomination and selection of Literature Laureates*, THE NOBEL PRIZE, https://www.nobelprize.org/nomination/literature/. In other words, the Nobel Committee for Literature awards the Nobel Prize exclusively to those persons whom a "qualified individual" has *requested* the Committee to select as the recipient, *i.e.,* through a

Accordingly, Rule 311(a)(6)'s plain and unambiguous language affords an interlocutory appeal as of right only when the order emanates from a party's request for a new trial (and when the defendant claims that the charges should have been dismissed).[9] Neither a request for a mistrial, nor the trial court's *sua sponte* declaration of the same, constitutes a request for new trial.

nomination. As such, the highly selective and unusual use of the verb "award" offered by the Dissent fails to demonstrate that the act of "awarding" is unconnected to any request. To the contrary, the Dissent's example demonstrates that the word typically is used in circumstances where there was a request to confer a benefit to an individual and where that individual's conduct warranted the conferral of the benefit.

From its incomplete analysis, the Dissent concludes that, "awards may be given based purely on circumstances as decided by the entity with the power to award." Dissenting Op. at 4-5. This phrasing is too broad, leaving the term "award" meaningless. Under that suggested construction, there is no distinction between the verb "award" and the verb "give." The particular circumstances that factor into that entity's decision are limited when "award" describes the entity's action. Specifically, the decision-maker who is "awarding" a benefit considers whether the recipient's actions merit the benefit. A request for the benefit initiates that deliberative process. Accordingly, the Dissent's proffered interpretation is unreasonable, and it fails to render Rule 311(a)(6) ambiguous.

[9] The Dissent maintains that our interpretation will leave Rule 311(a)(6) inoperable as it concerns criminal defendants because, "if the defendant requests a new trial . . . but does not request total discharge, then his appeal will doubtlessly fail." Dissenting Op. at 10 n.7. In making this argument, the Dissent presents a false dichotomy, improperly characterizing two compatible modes as mutually exclusive. A criminal defendant can request a new trial while claiming simultaneously that he or she is entitled to absolute dismissal of the charges. There is no irreconcilable contradiction. For example, a defendant may claim that the erroneous admission of evidence warrants a new trial while arguing simultaneously that, absent the erroneously admitted evidence, the Commonwealth failed to satisfy its burden of proof and that he or she is entitled to dismissal. If the trial court agrees that the evidence was inadmissible but finds that the Commonwealth satisfied its burden of proof otherwise, then the defendant would retain a right to appeal under the rule. *See, e.g.*, *Liddick,* 370 A.2d at 730. Moreover, we are not suggesting, as the Dissent appears to believe, that the portion of Rule 311(a)(6) *sub judice* applies only when the defendant requests a new trial. The rule, in relevant part, is triggered: (1) upon the court granting a party's request for a new trial and (2) upon the defendant asserting a right to absolute discharge. The first condition is met if the trial court grants either the Commonwealth's request for a new trial or the defendant's request for a new trial.

The necessary request plainly is absent when the court acts on its own volition. Still, a party's request for a mistrial also is not a request for a new trial. A mistrial is a step removed from a new trial, precluding the inference that a request for a mistrial is a request for a new trial. Often, a mistrial results in an order for a new trial, but that is not categorically true. We have stated that, "*[i]n some circumstances*, a defendant may be retried following a mistrial. However, because of the double jeopardy clause's policy of prohibiting multiple trials, retrial is 'only grudgingly allowed,' and is limited to cases in which the defendant consented or the declaration of a mistrial was manifestly necessary." *Commonwealth v. Bolden*, 373 A.2d 90, 101 (Pa. 1977) (plurality) (emphasis added) (quoting *United States v. Wilson*, 420 U.S. 332, 343 (1975)). Even when a defendant requests a mistrial, a new trial is not guaranteed. *See Commonwealth v. Smith*, 615 A.2d 321 (1992) (holding that retrial is barred where prosecutor engaged in misconduct with the intent to coax the defendant into moving for a mistrial.).

However, an order granting a motion for a new trial always results in an order for a new trial.[10] Moreover, in deciding whether a mistrial is warranted, the court is not inquiring whether the asserted basis for relief warrants a new trial. Instead, the court inquires whether the alleged prejudicial event deprived the defendant of a fair trial. *Commonwealth v. Jones*, 668 A.2d 491, 503 (Pa. 1995). Conversely, when ruling upon a motion for a new trial, the court's inquiry asks specifically whether the asserted basis

---

[10] The Dissent asserts that this distinction is illusory because, "even if the Commonwealth were to somehow seek and receive a new trial, . . . retrial is not a fait accompli as the Commonwealth could decide that a retrial is not worth pursuing for whatever reason." Dissenting Op. at 10 n.7. But, the Commonwealth's after-the-fact decision to *nolle prosequi* charges in an exercise of prosecutorial discretion does not make the order for a new trial anything less. In this scenario, *nolle prosequi* occurs when the Commonwealth opts to exercise its discretion to drop a case after the court orders a new trial. When the trial court grants a motion for new trial, it is always ordering a new trial, regardless of whether the new trial ultimately does or does not occur. However, an order declaring a mistrial, standing alone, is not an order directing a new trial.

for relief entitles the movant to a new trial. Given these distinctions, only a motion for a new trial equates to a request for a new trial.

As such, a court enters an order "awarding a new trial" for purposes of Rule 311(a)(6) only when it grants a party's motion for a new trial. The converse is true as well: absent a motion for a new trial, the court has not entered "an order awarding a new trial." The rule's plain and unambiguous language mandates this conclusion.

Wardlaw fails to offer a contrary interpretation. In fact, he fails to confront the text of Rule 311(a)(6) at all. Instead, he insists that our decisions in *Liddick* and *Chenet* require that we effectively relegate "award" to a status of mere surplusage. We are not permitted to interpret provisions of our law (be they statute or rule) in such a way.[11] But, just as importantly, neither of the cited precedents can bear the weight that Wardlaw places upon it.

In *Liddick*, the Commonwealth charged Wayne Liddick with murder. *Liddick*, 370 A.2d at 730. At a jury trial, the Commonwealth introduced unduly prejudicial photographs of the victim, and the jury found Liddick guilty. *Id.* After sentencing, Liddick filed a motion for a new trial. *Id.* He also sought a judgment of acquittal, claiming that the Commonwealth's evidence was insufficient to support his murder conviction. *Id.* The trial court concluded that the admission of the prejudicial photographs warranted a new trial but held that the Commonwealth otherwise presented sufficient evidence to support the charge. *Id.* Thus, the court entered an order awarding a new trial but denying the motion in arrest of judgment. *Id.*

The parties cross-appealed. *Id.* Regarding Liddick's appeal of the denial of his motion in arrest of judgment, the Commonwealth maintained that the Court should quash

---

[11]    *See McClelland*, 233 A.3d at 734; 1 Pa.C.S. § 1922(2) (providing that "the General Assembly intends the entire statute to be effective and certain").

the appeal. *Id.* at 731 n.2. The Commonwealth reasoned that, because a new trial had been granted, the order was interlocutory and non-appealable pursuant to the final judgment rule, which permits appeals only from the entry of a final judgment of sentence. *Id.* This Court disagreed, stating:

> It is true that as a general rule a defendant may take an appeal only from judgment of sentence. *See, e.g.*, *Commonwealth v. Pollick*, 215 A.2d 904 (Pa. 1966). However, Rule 311(b)[12] of the Pennsylvania Rules of Appellate Procedure recognizes an exception to that rule: an appeal may be taken from an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge. This language closely parallels that of § 1.3 of the ABA Standards on Criminal Appeals (Approved Draft, 1970). Comment D to § 1.3 of the ABA Standards reasons that to require such a defendant to stand trial again, if the *already completed* trial demonstrates his innocence, is a needless hardship. That observation is particularly apt in this situation where the case is already before us because of the Commonwealth's cross appeal.

*Id.* (cleaned up) (emphasis added).

In *Chenet,* this Court merely applied *Liddick*. There, Richard Chenet was convicted of possession of a controlled substance. *Chenet*, 373 A.2d at 1108. After the jury rendered its verdict, he filed a motion for a new trial and a motion in arrest of judgment. *Id*. The trial court granted the motion for a new trial but denied the motion in arrest of judgment. *Id*. Chenet appealed, claiming that the evidence was insufficient to support a finding of guilt. *Id.* Before this Court, the parties did not appear to dispute the appealability of the order. Nevertheless, this Court stated, "[w]e have recently made clear that an interlocutory order denying a motion in arrest of judgment, based on a claim of

---

12 Rule 311(b) was one of several prior versions of Rule 311(a)(6). The various prior versions of the rule either renumbered or restructured the rule, but did not make any substantive changes. The rule, in relevant part, has always stated that a criminal defendant has a right to an interlocutory appeal upon the court awarding a new trial when the defendant raised a claim that would result in a complete dismissal of the charges against him.

insufficient evidence, *when a new trial has been granted*, is appealable." *Id.* at 1108 n.1 (emphasis added).

Undeniably, *Liddick* and *Chenet* support the proposition that Rule 311(a)(6) aims to prevent the needless hardship that would arise from retrying a defendant when retrial is in fact barred. However, those decisions are distinguishable from the instant case in the most salient respect. In both of those precedents, the defendant filed a motion for a new trial, the trial court granted the motion, and, thus, the court "awarded" a new trial.[13] There was no declaration of a mistrial in either case. As such, *Liddick and Chenet* support our holding that Rule 311(a)(6) only applies to those orders granting a motion for a new trial. The rule does not apply when a trial court declares a mistrial. Under such circumstances, no party has been "awarded" a new trial, differing substantively from the circumstances in *Liddick* and *Chenet*.

Wardlaw contends nonetheless that any differentiation between the circumstances that give rise to a new trial is a distinction without a difference, serving only to defeat the purpose of Rule 311(a)(6). Wardlaw correctly notes that, when a defendant faces retrial but claims that double jeopardy bars retrial, the new trial presents a potentially needless

---

[13] The Dissent assails this distinction as irrelevant because "Liddick was not appealing the order awarding him a new trial but rather was appealing the court's failure to grant his request for total discharge." Dissenting Op. at 8-9. The Dissent's disagreement flows from an incomplete characterization of the order that Liddick appealed. While Liddick did not contest the trial court's decision to grant his motion for a new trial, he nevertheless appealed from the order that awarded the new trial. In *Liddick*, the trial court entered a *single* "order that both granted Liddick's motion for a new trial and denied his motion in arrest of judgment." *Liddick*, 370 A.2d at 730. Therefore, unlike the present case, Liddick appealed from "an order awarding a new trial" within the meaning of Rule 311(a)(6). Further, the rule plainly does not require the defendant to appeal from an order denying a motion for absolute discharge. It affords appeals from "an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge." Pa.R.A.P. 311(a)(6). Although the defendant must claim an entitlement to absolute discharge to avail herself or himself of the rule, the order appealed from need not deny such a claim.

hardship, regardless of whether the retrial results from a mistrial or from a motion for a new trial. Contrary to Wardlaw's claim, however, the rule's distinction between new trials that are "awarded" upon a party's motion for a new trial and new trials that result from a mistrial is not a sheer exercise in formalism.

By focusing exclusively upon Rule 311(a)(6)'s purpose, Wardlaw not only ignores the plain and unambiguous language of the rule, but also erroneously decontextualizes the rule, losing sight of how the distinction advances judicial economy. Rule 311 provides exceptions to the final judgment rule, which aims to create a clear division of labor between our Commonwealth's trial and appellate courts. *Shearer v. Hafer*, 177 A.3d 850, 855 (Pa. 2018). In drawing that line, the rule encourages judicial economy by precluding piecemeal determinations and by preventing unjustifiably prolonged litigation. *Jenkins v. Hosp. of Med. Coll. of Pa.*, 634 A.2d 1099, 1102 (Pa. 1993). To prevent undue erosion of the boundary set by the final judgment rule, we must construe its exceptions narrowly, never losing sight of its salutary goals. *See In re Twenty-Fourth Statewide Investigating Grand Jury*, 907 A.2d 505, 510 (Pa. 2006).

To be sure, rigid application of the final judgment rule can undercut the rule's underlying principles and unjustly deny litigants prompt review of erroneous interlocutory orders. But our view of Rule 311(a)(6) does not amount to such an unduly narrow and unjust application of the rule. In holding that Rule 311(a)(6) distinguishes between new trials that result from a mistrial and those that result from a motion for a new trial, we uphold the careful balance between the Commonwealth's interest in judicial economy and the defendant's interest in prompt review of erroneous interlocutory orders. That balance results from the simple fact that defendants are more likely to prevail on a claim for absolute discharge when the new trial results from a motion for a new trial than when it results from a mistrial. Indeed, "[w]hen a mistrial is granted at the defendant's request,

there is *usually* no bar to reprosecution." *Commonwealth v. Potter*, 386 A.2d 918, 920 (Pa. 1978) (emphasis added). Moreover, it is well settled that, generally, a defendant may be retried, without violating double jeopardy principles, after a first trial yields a deadlocked jury. *Commonwealth v. Buffington*, 828 A.2d 1024, 1029 (Pa. 2003). Relatedly, the Supreme Court of the United States has held that a federal double jeopardy claim does not lie where a deadlocked jury necessitates a retrial, "*[r]egardless of the sufficiency of the evidence* at [the] first trial." *Richardson v. United States*, 468 U.S. 317, 326 (1984) (emphasis added). Although these principles are not inviolable, they demonstrate the difficulty in preventing retrial following a mistrial. Put simply, injustice is less likely to result from delayed resolution of an appeal premised upon a claim that a retrial following a mistrial is barred.[14]

Because barring retrial is unlikely when there is a mistrial, Rule 311(a)(6) sensibly excludes mistrials from its reach. In doing so, the rule achieves a balance between judicial economy and securing prompt justice for defendants. Wardlaw would have us adopt a broad view of the rule that would ensure the promptest resolution of erroneous interlocutory orders. However, to focus solely upon ensuring swift resolution of erroneous trial court decisions would open the floodgates to a host of interlocutory appeals, unduly

---

[14] This is not to say that a mistrial always permits retrial. Indeed, as explained *supra*, the fact that a new trial does not automatically follow a mistrial is vital to our interpretation of the rule. Nor are we expressing our view as to whether retrial of Wardlaw, in fact, is barred. That question is beyond the scope of this appeal. We are recognizing merely that, in defining exceptions to the final judgment rule, this Court has weighed judicial economy against the likelihood that harm will result from protracted appellate review of the challenged interlocutory order. The law as it stands provides limited avenues to contest retrial when the new trial flows from a mistrial. Because the exceptions to the final judgment rule aim to abate *likely* injustices associated with delayed appellate review, Rule 311(a)(6) does not concern appeals from an order declaring a mistrial.

eroding the final judgment rule and overwhelming an already inundated Superior Court.[15] We cannot disregard such practical considerations in the face of the rule's unambiguous language.

We recognize that Rule 311(a)(6) is integral to the fundamental and deeply cherished philosophy that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a

---

[15] The Dissent does not share this concern inasmuch as "many defendants facing serious charges are likely to remain incarcerated pending appeal and the retrial. Thus, the delays caused by pursuing an appeal and the fact that such appeals will rarely succeed will serve to disincentivize frivolous appeals." Dissenting Op. at 11 n.8. This criticism overlooks two critical points. First, Rule 311(a)(6) is not limited to cases involving "serious" charges, to defendants held in pretrial incarceration, or to cases in which defendants seek to appeal. The rule affords an appeal as of right to all defendants, regardless of the charges they face, and to the Commonwealth as well.

Second, our interpretation of what amounts to an "order awarding a new trial" will affect the appealability of certain interlocutory orders in civil cases as well. Rule 311(a)(6) further provides an appeal as of right from "an order in a civil action or proceeding *awarding a new trial.*" Pa.R.A.P. 311(a)(6) (emphasis added). Unlike the portion of the rule concerning appeals in criminal cases, this part of the rule does not limit the right to those appellants seeking discharge of the matter or those appellants claiming that the trial court committed an error of law. If we were to interpret the phrase "awarding a new trial" in the context of criminal proceedings as encompassing both mistrial orders and orders granting a motion for a new trial, that interpretation would also afford civil litigants an appeal as of right from all orders declaring a mistrial. To hold that Rule 311(a)(6)'s phrase "an order awarding a new trial" bears two different meanings as it applies to civil and criminal cases would be to contravene the basic interpretive canon that provisions of law which concern the same subject shall bear consistent meanings. *See* 1 Pa.C.S. § 1932(a) ("Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things."). An interpretation of Rule 311(a)(6) that includes a right to appeal from mistrials would depart from the Superior Court's longstanding application of the rule in both the criminal and civil contexts, and would doubtless increase that busy court's caseload substantially. *See Yon v. Yarus,* 700 A.2d 545, 546 (Pa. Super. 1997) (holding the grant of a mistrial in a civil case is not an appealable order under Rule 311(a)(6)); *McPherson*, 533 A.2d at 1062 (holding that an appeal from an order granting a mistrial in a criminal case "must be quashed as interlocutory.").

continuing state of anxiety and insecurity." *Green v. United States*, 355 U.S. 184, 187 (1957); *see also Liddick*, 370 A.2d at 731 n.2. But the rule *sub judice* is merely one procedural protection against such injustice. A distinct procedural rule allows for interlocutory appeals for those who claim that double jeopardy bars retrial.

Specifically, Pennsylvania Rule of Criminal Procedure 587(B) offers such protection. When a trial court denies a motion to dismiss on double jeopardy grounds and finds the motion to be frivolous, "a defendant has a right to file a petition for review of that determination pursuant to Rule of Appellate Procedure 1573 within 30 days of the order denying the motion." Pa.R.Crim.P 587(B)(5). If the court determines that the motion was not frivolous, then "the denial is immediately appealable as a collateral order." *Id.* (B)(6). Indeed, Wardlaw attempted to seek interlocutory review of his double jeopardy claim through Rule 587, but his attempt failed.[16] We decline to use his failure as a reason to disregard the plain and unambiguous mandate of Rule 311(a)(6).[17]

---

[16] *See supra* n.4.

[17] The Dissent contends that "[w]e should allow this appeal precisely because there is no other viable avenue to present" Wardlaw's claim "that his retrial is barred under double jeopardy for failure to present sufficient evidence during the first trial." Dissenting Op. at 13-14. The Dissent maintains that such a claim is barred by the Supreme Court of the United States' decision in *Richardson*, which held that a federal double jeopardy claim does not lie where a deadlocked jury necessitates a retrial, "[r]egardless of the sufficiency of the evidence at [the] first trial." *See Richardson*, 468 U.S. at 326. The *Richardson* decision makes it more difficult to bring a non-frivolous claim that double jeopardy bars retrial under Rule 587(B), but that decision does not make it impossible to do so. Rule 587(B) is not limited to double jeopardy claims asserting a violation of federal constitutional rights; it also encompasses double jeopardy claims brought under Pennsylvania's own Constitution. *Richardson* does not, and cannot, compel the conclusion that state law double jeopardy claims are frivolous. Further, *Richardson* does not prohibit defendants from presenting a non-frivolous argument that retrial is barred because the jury did not deliberate long enough and the trial court prematurely concluded that manifest necessity warranted the declaration of a mistrial. *See, e.g., Commonwealth v. Bartolomucci*, 362 A.2d 234, 239-40 (Pa. 1976). While the lower courts found that Wardlaw's claim was frivolous for purposes of Rule 587(B), neither his failure to secure review under Rule 587(B), nor *Richardson*, prevents similarly situated defendants from

In sum, per its plain and unambiguous language, Rule 311(a)(6) affords an interlocutory appeal as of right from orders that award a new trial. One cannot award that which is not sought. Consequently, a new trial is awarded only when the court grants a party's motion for a new trial. When the new trial flows from the declaration of a mistrial, the court has not awarded a new trial. Here, the trial court declared a mistrial; it did not grant a motion for a new trial. Accordingly, Wardlaw did not appeal from an order awarding a new trial, and the Superior Court correctly determined that Wardlaw was not entitled to an interlocutory appeal under Pennsylvania Rule of Appellate Procedure 311(a)(6). The Superior Court's order quashing the appeal is affirmed.

Chief Justice Baer and Justices Saylor, Todd, Dougherty and Mundy join the opinion.

Justice Dougherty files a concurring opinion in which Justice Wecht joins.

Justice Donohue files a dissenting opinion.

---

presenting non-frivolous claims and seeking immediate review of the trial court's denial of any such claims. Finally, a defendant's inability to secure interlocutory review of a double jeopardy claim does not preclude that defendant from raising the claim in a post-sentence appeal.