J-A20035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: DRAVO LLC SUBCHAPTER G DISSOLUTION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ALL CLAIMANTS | : | |
| REPRESENTED BY SAVINIS, KANE, & | : | |
| GALLUCCI, LLC AND GOLDBERG, | : | |
| PERSKY, & WHITE, P.C. | : | No. 893 WDA 2020 |

Appeal from the Order Entered July 17, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): G.D. 18-010151

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: NOVEMBER 8, 2021**

This matter concerns the dissolution of Dravo LLC (Dravo), under Subchapter G of the Pennsylvania Uniform Limited Liability Company Act of 2016[1] (the Act), in the Allegheny County Court of Common Pleas. Appellants are asbestos claimants, represented by Savinis, Kane, & Gallucci, LLC and Goldberg, Persky, & White, P.C., who have claims against Dravo. Appellants appeal from three orders entered July 17, 2020, which: (1) adopted the May 26, 2020, supplemental record of the special master (Supplemental Master Record Order); (2) approved a case management order (CMO); and (3) approved a settlement agreement between Dravo and its insurer, and assumed *in rem* jurisdiction over Dravo's insurance and financial assets

---

[1] 15 Pa.C.S. §§ 8811-8898 (Act). **See also** 15 Pa.C.S. §§ 8871-8878 (Subchapter G, Dissolution & Winding Up).

(Settlement Order).[2]  Appellants have presented no argument concerning the Supplemental Master Record Order, and therefore have waived any challenge thereto.  We quash the appeal from the CMO, which we determine to be an unappealable interlocutory order.  We remand the appeal from the Settlement Order for the trial court to prepare a supplemental opinion.  Finally, we grant the application to withdraw from representation, regarding one of the attorneys for Dravo's insurer.

## I.  Procedural History

On May 30, 2018, Dravo **Corporation** was converted to a limited liability company (LLC) pursuant to filings under Subchapter E of the Pennsylvania Entity Transactions Law.[3]  Trial Ct. Op., 1/19/21, at 1; N.T., 1/17/19, at 60.  Approximately five weeks later, on July 5, 2018, Dravo, **LLC** was formally dissolved upon the filing of a certificate of dissolution with the Department of State, pursuant to Subchapter G of the Act.  "Dravo is a defendant in numerous lawsuits alleging injuries from exposure to asbestos."

---

[2] The certified electronic record does not include a trial docket that lists the dates of entry and service of each filing.  **See** Pa.R.A.P. 1921 ("The original papers and exhibits filed in the lower court, [transcripts], and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases.").  Instead, the first document in the record is an "index," which lists the filings with a "Filed Date."  We note the listed "Filed Date" for the three July 17, 2020, orders is "7/20/2020."  Index at 4.

[3] 15 Pa. C.S. §§ 351-356.

Dravo's Petition for Approval of Settlement Agreement & Entry of Approval Order, 11/19/18, at 1.

The trial court summarized the following procedural history:

. . . Dravo provided notice of the dissolution to all known claimants.[ ] As to unknown claimants, Dravo published notice of its dissolution in various media, including the Wall Street Journal and the Pittsburgh Legal Journal[.] This Court found that the notice of dissolution met the requirements under Section 8875 of the Act, and that Dravo's official publication of its notice of dissolution on July 13, 2018 established a bar date under the Act of July 13, 2020. Some hundreds of claimants thereafter came forward to pursue recovery as a result of Dravo's notice[.]

Trial Ct. Op. at 2.

This matter was initiated on August 7, 2018, by Dravo's filing a "Section 8876" petition, pursuant to Subchapter G of the Act, to commence proceedings for a determination of the amount and form of security for payment of claims. *See* 15 Pa.C.S. § 8876(a) ("A dissolved [LLC] that has officially published a notice under section 8875 . . . may file an application with the court for a determination of the amount and form of security to be provided for payment of claims that are reasonably expected to arise after the date of dissolution based on facts known to the company . . . .").

Next, on November 19, 2018, Dravo filed a petition for court approval of a settlement agreement between Dravo and one of its excess insurance carriers, Resolute Administered London Market Insurers (Resolute). Under this agreement, "Resolute would pay Dravo $7,000,000[ ] to satisfy the costs of any liability actions or suits[.]" Trial Ct. Op. at 2. The November 19th

petition also requested the trial court to "assume *in rem* jurisdiction over the funds that will be generated by the settlement agreement[.]" Dravo's Petition for Approval of Settlement Agreement & Entry of Approval Order at 1. Appellants filed objections, arguing: (1) Resolute was attempting to avoid its obligations under its insurance policies; and (2) "[t]he circumstances surrounding the Settlement Agreement and the dissolution proceeding . . . strongly suggest a lack of good faith."[4] Appellants' Objection to Petition of Dravo for Approval of Settlement Agreement, 1/10/19, at 1-2.

The trial court conducted evidentiary hearings on January 17 and February 26, 2019, "on the adequacy of the settlement.[ ]" Trial Ct. Op. at 3. Notably, Appellants claimed Dravo had available insurance of more than $100 million, and requested time to conduct discovery "targeted at whether Dravo got the best settlement possible under the circumstances." **See** N.T., 2/26/19, at 44, 58 (Appellants' counsel arguing, "[W]e're talking about hundreds of millions of dollars being turned — essentially going poof, a $7 million cash figure[.]"). Thereafter, the parties engaged in "active litigation, with various oral arguments, significant motions practice, and time devoted to discovery." Trial Ct. Op. at 3.

---

4 Appellants further averred, "The deal is either a conspiracy between [Resolute] and Dravo or a one-sided attempt by [Resolute] to override the interests of its insured and misuse Pennsylvania's dissolution laws to release [Resolute] from its clear obligation under its insurance policies[.]" Appellants' Objection to Petition of Dravo for Approval of Settlement Agreement at 1-2.

- 4 -

On July 17, 2020, the trial court entered the underlying three orders. First, a one-page order adopted the May 26, 2020, supplemental report of the special master and denied Appellant's motion to compel an estimation report. Next, the 12-page Settlement Order approved, in its entirety, the $7 million settlement agreement between Dravo and Resolute; the court found this agreement was entered in good faith, without fraud or collusion. Settlement Order, 7/17/20, at 9. In this order, the court also assumed exclusive *in rem* jurisdiction over the settlement proceeds. *Id.* at 10. Finally, the court determined that an immediate appeal from this order would facilitate resolution of the entire case, and thus declared the order a final, appealable order under Pa.R.A.P. 341(c).[5] *Id.* at 12. The third order entered on July 17, 2020, was the seven-page case management order, which set forth procedures and timelines for the parties with regard to Appellants' asbestos claims.

On August 18, 2020, Appellants filed a timely notice of appeal, purporting to appeal from all of the July 17th orders.[6] They also timely filed,

---

[5] *See* Pa.R.A.P. 341(a) (generally, "an appeal may be taken as of right from any final order"), (c) ("[T]he trial court . . . may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case.").

[6] *See* Appellants' Notice of Appeal, 8/18/20 (appealing "from the Orders entered in this matter on the 17th day of July, 2020 in favor of [Dravo], as well as prior orders subsumed within these rulings, such as those docketed on August 2, 2019").

following an extension of time, a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[7]  Dravo filed a motion with this Court to quash Appellants' appeal.  On June 21, 2021, this Court issued a *per curiam* order denying the motion without prejudice to Dravo to raise this issue again in its brief or in a new application.[8]

## II.  Statement of Questions Involved

Appellants raise the following questions on appeal:

A. Whether the Trial Court exceeded the authority granted to it under Subchapter G by taking jurisdiction over Known claims and Other claims for which a valid lawsuit was already filed against Dravo prior to July 9, 2020.

B. Whether the Trial Court exceeded the authority granted to it under Subchapter G by taking jurisdiction over lawsuits validly filed in foreign jurisdictions.

C. Whether the Trial Court exceeded the authority granted to it under Subchapter G, by entering a CMO that violates [Appellants'] Due Process rights through the abridgment of the Pennsylvania Rules of Civil Procedure as well as the Pennsylvania Constitution.

---

[7] We note that even after the notice of appeal, the parties continued litigation. Dravo filed: a "First Status Report . . . and Request for Status Conference;" a "Motion to Bar Claims for Failure to Comply with [CMO];" and a "Motion to Bar Post Bar Date Asbestos Claim."  Appellants filed a response to the motion to bar claims for failure to comply with the CMO, to which Dravo then filed a reply brief.  Finally, on December 10, 2020, Dravo filed a second status report. On January 20, 2021, the trial court issued an order, referring to a status conference held on January 7th and directing all asbestos claimants' counsel to comply with the CMO, "even as to cases originally filed in another jurisdiction."  Order, 1/20/21.

[8] We further note Resolute has filed a letter with this Court, stating it joins sections I, II, and III of Dravo's Brief, and it will not file a separate brief.

D. Whether the Trial Court exceeded the authority granted to it under Subchapter G in approving the settlement by failing to provide compensation for all claims, including future unmanifested asbestos claims, by violating Public Policy and the Pennsylvania Constitution for those asbestos victims with creeping diseases.

Appellants' Brief at 6.

### III.  Supplemental Master Record Order

With respect to the order adopting the special master's supplemental report and denying their motion to compel discovery, Appellants state in their brief:

[A]lthough [Appellants] filed an appeal of the July 17, 2020 Order of Court regarding discovery issues, counsel believes that if [Appellants] would not be successful on the appeal of the overarching issues from the other two July 17, 2020 orders, then [Appellants] will not be successful on the discovery issue. Therefore, [Appellants] offer no argument on the discovery issue.

Appellants' Brief at 18.

Given the lack of any argument challenging this order, we deem any issue relating thereto waived.  **See** Pa. R.A.P. 2119(a) (the argument shall include "discussion and citation of authorities as are deemed pertinent"); **Krishnan v. Cutler Grp., Inc.**, 171 A.3d 856, 896 (Pa. Super. 2017) ("[A]rguments which are not appropriately developed are waived[.]").

### IV. Case Management Order

As stated above, the trial court's case management order set forth time frames and procedures "for establishing the amount and form of security to be provided under Section 8876 for the Asbestos Claims pending against

Dravo as of December 31, 2019."[9]  CMO, 7/17/20, at 4.  By way of example, the order directed: (1) "[i]n order to protect [the] Court's statutory jurisdiction under Subchapter G . . . no settlement, judgment or verdict obtained in any Asbestos Claim may be paid from, impair, or be a lien against the Insurance Assets of Dravo without the express approval of this Court[;]" (2) within 45 days of the CMO, any asbestos claimant "shall submit in writing to Dravo a list of such claims[;]" (3) the claimants' counsel "shall meet and confer with Dravo's counsel[,] to determine whether the parties can agree on an amount of security[;]" (4) a status conference will be held on November 13, 2020; and (5) the court will hold, date unspecified, an evidentiary hearing "to permit Dravo or any other interested party to present evidence and argument on the appropriate amount and form of the security that Dravo will need to post under Section 8879[.]"  *Id.*at 4-6.

On appeal, Appellants argue that in issuing the CMO, the trial court exceeded its authority under Subchapter G, and violated their due process rights by abridging the Pennsylvania Rules of Civil Procedure.  Appellants contend "the CMO places [them] in a weakened position, all at the design and schedule proposed by Dravo," while "favoring Dravo."  Appellant's Brief at 48.  For example, Appellants argue, the CMO sets a deadline for them to "establish

---

[9] The trial court explained that "[a] supplemental order will extend the procedure to Asbestos Claims served on Dravo after January 1, 2020 and filed before July 13, 2020."  CMO at 4.

whether sufficient evidence of product identification exists in each of the hundreds of lawsuits," but provides "[n]o discovery period . . . for gathering of evidence." *Id.* Furthermore, Appellants claim, "the CMO permits Dravo to file a motion to bar [Appellants] from recovery" "[i]f Dravo disagreed with the evidence offered by" Appellants. *Id.* at 48-49. However, Appellants maintain, the Rules of Civil Procedure do not have a 'motion to bar recovery.'" *Id.* at 49. Finally, we note, Appellants assert the CMO is appealable because the order also assumes *in rem* jurisdiction over Dravo's insurance assets, and "[a]ny order taking *in rem* jurisdiction is . . . appealable as of right pursuant to Pa.R.A.P. 311(b)." *Id.* at 45.

Dravo, meanwhile, argues the appeal from the CMO is interlocutory and improper. Dravo's Brief at 6, 49. Dravo disagrees that Rule 311 is satisfied. We agree with Dravo.

This Court has explained:

> As a jurisdictional issue, before considering the merits of this appeal, we must first determine whether the [trial court's] order is an appealable order under the Pennsylvania Rules of Appellate Procedure. Generally, as an appellate court, we only have jurisdiction to review final orders. *See* Pa.R.A.P. 341 (providing that "an appeal may be taken as of right from any final order"). Nevertheless, in appropriate circumstances, the rules allow an appeal to be taken from an interlocutory order. *See* Pa.R.A.P. 311 . . . .

*Kronstain v. Miller*, 19 A.3d 1119, 1123 (Pa. Super. 2011).

Pennsylvania Rule of Appellate Procedure 311 governs interlocutory appeals as of right. Appellants rely on Rule 311(b), which provides:

**(b) Order sustaining venue or personal or in rem jurisdiction. —**An appeal may be taken as of right from an order in a civil action or proceeding sustaining . . . jurisdiction over the person or over real or personal property if:

(1) the plaintiff, petitioner, or other party benefiting from the order files of record within ten days after the entry of the order an election that the order shall be deemed final; or

(2) the court states in the order that a substantial issue of venue or jurisdiction is presented.

*See* Pa.R.A.P. 311(b)(1)-(2).

Here, as Dravo points out: (1) no party, including Appellants, filed an election that the CMO be deemed final; and (2) the trial court made no suggestion "that a substantial issue of venue or jurisdiction is presented." *See* Dravo's Brief at 49-50, *citing* Pa.R.A.P. 311(b)(1)-(2). Appellants raise no argument to the contrary. We thus conclude the CMO is not, as Appellants claim, an appealable interlocutory order as of right under Rule 311(b). *See* Pa.R.A.P. 311(b)(1)-(2). Accordingly, we quash the appeal from the CMO, without prejudice to any properly-presented appeal from a final order sounding in application of the CMO.

## V. Settlement Order

Appellants contend "this matter [spans] hundreds of lawsuits over multiple jurisdictions[.]" Appellants' Brief at 18. Both before the trial court and on appeal, Appellants object to the $7 million settlement agreement between Dravo and Resolute, claiming, in part, that Dravo had available to it

- 10 -

more than $100 million in excess insurance coverage.[10] ***See id.*** at 31. Appellants maintain that Dravo and Resolute, however, "agreed to 'settle' a dispute over the amount of available insurance at $7 million[,]" in order "to shield the bulk of Dravo's assets from creditors through the misuse of § 8876." ***Id.*** at 31-32. Appellants assert, "The trial court erred in permitting a dissolving company and its insurer to intentionally deplete an asset that would otherwise be available to all creditors of the dissolving company through § 8876, [which] does not authorize such action."[11] ***Id.*** at 36.

In its opinion, the trial court reasoned:

Without citing evidence, Appellants . . . imply that the Settlement Agreement between Dravo and Resolute will leave Dravo with insufficient funds to pay legally valid claims. Both of these allegations are false, and there is no evidence to suggest that Dravo's assets and insurance monies will be insufficient. Despite the ongoing winding-up proceedings, Dravo is not insolvent and its settlement and insurance assets remain available to appropriate claimants.[FN] Indeed, one of the many justifications for this Court assuming *in rem* jurisdiction over the insurance assets of Dravo was to make certain that claimants may attain their necessary recovery. In so doing, this Court is also abiding by its statutory obligations under the Act.

---

[FN] At the settlement hearing, Bruce Inglis, a manager of Dravo, testified that "Dravo isn't insolvent" and the evidence is that on July 5, 2018[,] the day Dravo filed for dissolution, it had approximately $2.5 million in cash (some of which was restricted)

---

[10] Appellants claim that "[t]hrough discovery, [they] learned that . . . Dravo had already bought out the primary insurance coverage policy some years earlier." Appellants' Brief at 33.

[11] As stated above, the trial court deemed the Settlement Order a final, appealable order under Pa.R.A.P. Rule 341(c). Settlement Order at 12.

- 11 -

as well as the unliquidated but valuable rights under the excess insurance policies that further negotiation established had a value of $7 million, plus the value of the unsettled rights against the non-Resolute insurers. [N.T., 1/17/19, at 97.]

Trial Ct. Op. at 9 n.12 (some record citations omitted).

While the trial court set forth its reasons for assuming *in rem* jurisdiction of Dravo's insurance proceeds or assets, neither its opinion nor the record indicate the court's rationale for approving the amount of insurance proceeds to be made available. The court did not address why it approved a $7 million settlement figure, notwithstanding Appellants' claim that Dravo had available to it potentially $100 million in insurance coverage. The court also did not provide any estimate of the number of claimants or total value of claims against Dravo, nor address how it came to conclude $7 million in insurance proceeds, together with Dravo's $2.5 million in cash and other assets, would be sufficient to pay all of the valid claims made against Dravo.

To facilitate our review of this appeal, we remand this matter to the trial court to file, within 40 days of the date of this memorandum, a supplemental opinion addressing these matters. We direct that the court explain in greater depth the procedures in place in this matter to facilitate payment of judgments and settlements, whether entered prior to or subsequent to Dravo's notice of dissolution and how those procedures are consistent with full-faith and credit and comity principles. We direct that the trial court give some summary of the asbestos litigation it is currently monitoring as part of its exercise of in

rem jurisdiction, and inform this Court of settlements and judgments that have been approved and paid through that exercise of jurisdiction to date.

We also direct the trial court to detail the reasons for accepting the insurance settlement and concluding that its negotiation was adequate and was reached by negotiation between truly interested parties, and for more details as to its impact on pending claims, both those the court is monitoring and any others that may arise but that are unknown to the trial court at this time. We also direct the court to address the argument that the Settlement Order unfairly limits and caps settlements and judgments as to damages, including ones from other jurisdictions such as West Virginia, as well as the argument as to comity and the authority of other courts to administer cases within their jurisdictions. Finally, the court may also discuss any other relevant issue that would inform our consideration of the issues properly presented.

## VI. Application to Withdraw

Finally, we address an application, filed by Resolute's counsel, Ralph Luongo, Esquire, to withdraw the appearance of another Resolute attorney, Victoria Allen, Esquire. We grant this application.

## VII. Conclusion

In sum, we conclude Appellants have waived any challenge to the Supplemental Master Record Order, for failure to present any argument. We quash the appeal from the CMO, as that order is interlocutory and not

appealable under Pa.R.A.P. 311(b). With respect to the appeal from the Settlement Order, we remand for the trial court to file a supplemental opinion within 40 days of this memorandum. We also grant the application to withdraw Attorney Allen's appearance from this matter.

Appeal from Supplemental Master Record Order affirmed, on the basis of waiver. Appeal from CMO quashed. Appeal from Settlement Order remanded for a supplemental trial court opinion. Application to withdraw entry of appearance granted. Panel jurisdiction retained.